Filed 10/23/24  P. v. Carrasco CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082127 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE208418) |
| CARLOS HUMBERTO CARRASCO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Reversed and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kathryn A. Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

In 2008, a jury convicted Carlos Humberto Carrasco of two counts of second degree murder (Pen. Code,[1] § 187, subd. (a)) and one count of shooting into an inhabited dwelling (§ 246). The jury found the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and that a principal used a firearm causing the death of a person (§ 12022.53, subds. (d) and (e)). The trial court sentenced Carrasco to an indeterminate term of 80 years to life in prison.

Carrasco appealed, and this court affirmed the judgment in an unpublished opinion. (*People v. Carrasco* (July 13, 2010, D054174) (*Carrasco I*).)

In 2020, Carrasco filed a petition for resentencing under section 1170.95.[2] The court appointed counsel, received briefing, reviewed the record of conviction, and then denied the petition. Based on the opinion of this court in *Carrasco I*, the court denied the petition, finding the record demonstrated Carrasco acted with actual or implied malice.

Carrasco again appealed, arguing the court should not have relied on this court's prior opinion to determine he acted with express or implied malice in the commission of the offenses in this case. We concluded the prior opinion correctly determined Carrasco was either the actual killer or was a direct aider and abettor who acted with implied malice and affirmed. (*People v. Carrasco* (Dec. 22, 2021, D078123) (*Carrasco II*).)

On January 17, 2023, Carrasco filed a second petition for resentencing under section 1172.6 alleging he could not presently be convicted of murder

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) renumbered section 1170.95 to 1172.6, effective June 30, 2022.

under amended sections 188 and 189.[3]  He also requested that counsel be appointed to represent him.

The People filed an initial response to the petition for resentencing arguing it was procedurally barred as a successive petition under the doctrine of collateral estoppel and that this court's two prior decisions concluding that Carrasco was either the actual killer or aided and abetted an implied malice murder constituted the law of the case, which was binding on the trial court. The record does not reflect that the trial court appointed counsel to represent Carrasco or that he filed any responsive briefing.

On April 5, 2023, the trial court summarily denied the petition for resentencing.  In so doing, it explained that Carrasco had "not cited any authority permitting him to refile a petition for resentencing that was previously considered, denied, and the ruling affirmed on appeal." Responding to Carrasco's claim for relief under Senate Bill No. 775 (Senate Bill 775), the trial court indicated that "The amendments made by the passage of Senate Bill (S.B.) 775 did not amend the statute as it pertains to a murder conviction."

Carrasco appeals the order, contending the court erred by denying his second petition at the prima facie stage without appointing counsel and allowing him to file a responsive brief.  He argues a successive petition for resentencing is not prohibited where there is new authority undermining the grounds for the earlier denial.  Further, he submits that new authority shows the law of the case doctrine was improperly applied by the lower court to deny resentencing relief at the prima facie stage.  Because Carrasco contends

---

[3]  Carrasco also challenged his convictions under additional statutes, but he states in his opening brief that these are not the subject of the current appeal.  He suggests they could potentially be relevant in the future if he is found to be entitled to resentencing.

the appellate opinion in *Carrasco I* involved factfinding and did not affirm the second degree murder conviction on the basis of the law alone, and because Carrasco did not have an opportunity to brief his argument that his youth[4] impacted his criminal culpability, he asserts the error was not harmless.

We agree the court erred by not appointing counsel, and we conclude the error was prejudicial. By denying the second petition at the prima facie stage without counsel, the court deprived Carrasco of the opportunity to respond to the People's law of the case arguments through counsel and to argue that his youth at the time of the offenses impacted his culpability under an implied malice theory. We, therefore, reverse and remand the matter with directions to appoint counsel for Carrasco and conduct a new prima facie hearing.

FACTUAL BACKGROUND[5]

"1. *The People's evidence*

"a. *The June 22, 2007 shootings*

"On June 22, 2007, [K.L.] was in a car in an alley. [K.L.] saw four men in the alley, one of whom was yelling at a fifth man. According to [K.L.], one of the men from the group of four struck the fifth man in the head with a bottle. [K.L.] ducked down in the car. Shortly thereafter, she heard two gunshots.

---

[4]    The record indicates Carrasco was 18 years old at the time of the shooting.

[5]    We take the factual background from our previous opinion in Carrasco's direct appeal. (*Carrasco I, supra*, D054174.) This factual summary is recited for the limited purpose of providing context for Carrasco's criminal conviction. We do not otherwise rely on this factual background for purposes of our analysis here.

4

"A second witness, [I.S.], identified Carrasco in court as having been present in the alley during the June 22 shootings. [I.S.] also testified that she had previously identified [Jose] Nogales from a series of photographs as having been present in the alley and having fled the scene with a black gun tucked in his waistband. Carrasco's DNA was discovered on a bottle found at the scene of the June 22 shootings. Cartridge cases that matched the gun used in the murders charged in counts 3 and 4 were found at the scene of the June 22 shootings.

"b. *The July 8, 2007 murders*

"Just after midnight on July 8, 2007, several members of the Perez family and their friends were standing outside the Perez home, talking. A white pickup truck passed slowly by the Perez residence, made a U-turn at a cross street, and slowly approached the Perez residence again. Inside the pickup truck were the driver and at least one passenger. As the truck approached the Perez residence, it began driving even more slowly. The driver's side of the truck was closest to the Perez residence. The driver of the truck shouted through his open window, 'Paradise Hills. Paradise Hills. P.H.' The driver also asked, 'Where you from?' The driver appeared to be attempting to start a fight. [F.P.], who was standing close to the truck, angrily responded, 'Get out of here.' The passenger door of the truck then opened, and the passenger began shooting at the people standing outside the Perez home. Both [F.P.] and his brother, [J.P.], died from gunshot wounds to their heads.

"At approximately 3:30 a.m. that morning, police saw Carrasco at a gas station standing next to a white pickup truck. Police detained Carrasco and his girlfriend, [J.G.], who was in the truck. Several people who had been outside the Perez residence at the time of the shootings, including [R.P.],

were taken to the gas station and asked whether they could identify Carrasco as one of the perpetrators of the Perez murders. [R.P.] told police, 'Sure looks like him. . . .' A second eyewitness, [B.A.], told police that Carrasco was a 'good candidate.'

"While police were detaining Carrasco at the gas station, they learned that Carrasco had just dropped off Nogales at Nogales's apartment. At approximately 6:00 a.m. that morning, police went to Nogales's apartment, arrested him, and found the firearm that was used in both the June 22 shootings and the July 8 murders.

"c. *Gang evidence*

"The Paradise Hills criminal street gang has approximately 48 members. Carrasco and Nogales are active members of the gang. The July 8 murders were committed in the territory of a gang called the 'Lomita Village 70s.' The Paradise Hills gang and the Lomita Village 70s gang have a long standing rivalry.

"2. *The defense*

"Carrasco presented the testimony of several eyewitnesses who had not identified him at the gas station on the night of the murders. Carrasco also testified at trial. Carrasco admitted that he had been driving his girlfriend's mother's white pickup truck on the night of the murders. Carrasco also admitted that he was a member of the Paradise Hills gang, that he was close friends with Nogales, and that he had spent the evening of the murders with Nogales at a party. Carrasco denied having driven the white pickup truck near the time of the murders. Nogales presented no witnesses in his defense."

6

DISCUSSION

A.      *Applicable Law and Standard of Review*

Senate Bill No. 1437 (Senate Bill 1437) (2017-2018 Reg. Sess.) was enacted to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)  Senate Bill 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder.  (Stats. 2018, ch. 1015, §§ 2 & 3.)  Amended section 188 states:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Amended section 189 states:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e).)

Senate Bill 1437 also established resentencing relief for eligible defendants. (§ 1172.6, subd. (a); *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) Initially, these changes were codified at section 1170.95 but as noted *ante*, this statute was later renumbered as section 1172.6.

On appeal following a denial of resentencing relief, "[w]e independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).) We also conduct a de novo review of a trial court's interpretation of a statute. (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*).)

B.   *Analysis*

Section 1172.6, which went into effect well before Carrasco filed his second petition for resentencing in January 2023, sets forth the requirements for a facially sufficient petition. The petitioner must aver that (1) the charging document "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," (2) "[t]he petitioner was convicted of murder, attempted murder, or manslaughter[,]" and (3) "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)-(3).) "[I]f the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).)

8

Here, Carrasco filed and served a facially sufficient petition for resentencing and requested counsel.[6] At that point, the court was required to appoint counsel. (§ 1172.6, subd. (b)(3).) As our high court made clear in *Lewis*, *supra*, 11 Cal.5th 952, section 1172.6[7] "does not envision a structure by which courts can make an initial determination without briefing and without the appointment of counsel." (*Lewis*, at p. 966.) Instead, once a sufficient petition is filed that requests counsel, the court appoints counsel, the parties brief the issue, and the court makes its prima facie determination. (*Ibid.*) Accordingly, the court here erred by denying Carrasco's second petition for resentencing without first appointing counsel and providing him an opportunity to reply to the People's initial response.

The People argue the petition was nonetheless barred by the law of the case doctrine. Given our conclusion that the court erred, we construe this as a harmless error argument.

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.) However, "during subsequent proceedings in the same case, an appellate court's binding legal determination 'controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based. [Citations.]' "

---

6  Notably, the record from Carrasco's direct appeal confirms the jury was instructed on second degree felony murder based on the act of shooting at an inhabited residence. (*Carrasco I*, D054174 [the court instructed using CALCRIM Nos. 541A and 541B].)

7  The *Lewis* court addressed former section 1170.95 but, for continuity, we will refer to it as section 1172.6.

(*People v. Barragan* (2004) 32 Cal.4th 236, 246; *Harden, supra,* 81 Cal.App.5th at p. 50.) "Where ' "there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked." ' " (*Ibid.*) Similarly, "Because the rule is merely one of procedure and does not go to the jurisdiction of the court [citations], the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations." (*People v. Stanley* (1995) 10 Cal.4th 764, 787 (*Stanley*); see also *People v. Jimenez* (2024) 103 Cal.App.5th 994, 1006–1007.)

According to the People, Carrasco argued in both petitions that he was not the killer and was prosecuted under a now-invalid theory of murder. They read our holding in affirming the denial of Carrasco's first petition as concluding that "the record of conviction established that [Carrasco], at a minimum, was a direct aider and abettor who acted with implied malice." In the People's view, this holding is the law of the case, bound the lower court, and barred the relief Carrasco sought in his second petition. Thus, the People presumably would argue, as they did in making a related harmless error argument, that any error in failing to appoint counsel was harmless because counsel could not have made any argument that would have changed the outcome.

To demonstrate that a court's error in failing to appoint counsel was indeed prejudicial, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would

10

not have been summarily denied without an evidentiary hearing." ' " (*Lewis, supra*, 11 Cal.5th at p. 974 [applying the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836].)

We conclude Carrasco has satisfied this burden. As an initial matter, we agree it is reasonably probable counsel would have persuaded the court that the law of the case doctrine did not bar relief in this instance. When we issued our opinion on Carrasco's first resentencing petition, the state of the law did not expressly prohibit us from considering the factual record set forth in *Carrasco I* in evaluating Carrasco's appeal of the order denying his first petition for resentencing. (*Lewis, supra,* 11 Cal.5th at pp. 971–972; *People v. Clements* (2022) 75 Cal.App.5th 276, 292.) We did so to the extent we relied on the analysis set forth in this court's opinion on direct appeal. (*Carrasco II, supra*, D078123.) Specifically, we cited to the *Carrasco I* court's decision that the lower court erred by giving a second degree felony murder instruction[8] but that the error was harmless beyond a reasonable doubt. (*Carrasco II, supra*, D078123.) The panel explained that, having "evaluated the evidence that established the fatal shooting was accomplished by shooting into an occupied dwelling[,]" " ' "no juror could have found that either of the appellants [']participated in this shooting, either as a shooter or as an aider and abettor, without also finding that [each] committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice.' " ' " (*Carrasco II, supra*, D078123 quoting *Carrasco I, supra*, D054174.) In light of these findings on direct appeal, we concluded Carrasco was not eligible for resentencing relief

---

[8] The instruction was deemed improper in light of *People v. Chun* (2009) 45 Cal.4th 1172, which was decided after Carrasco's trial was completed. (*Carrasco II, supra*, D078123.)

11

and that the lower court was not required to issue an order to show cause or hold an evidentiary hearing. (*Carrasco II*, *supra*, D078123.)

Subsequently, the Legislature enacted Senate Bill 775, which limited courts to relying only on the procedural history set forth in a prior appellate opinion during an evidentiary hearing to determine a petitioner's eligibility for resentencing. (§ 1172.6, subd. (d)(3); Stats 2021, ch. 551, § 2.) Thereafter, at least one court reasoned that if the factual summary in an appellate opinion "may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.) We agree with this analysis.

Carrasco specifically cited Senate Bill 775 in his second petition for resentencing. Thus, he adequately made apparent that the controlling rules of law changed between the denial of his first resentencing petition and the filing of his second resentencing petition. (*Stanley*, *supra*, 10 Cal.4th at p. 787.) This change undermined the basis for the denial of Carrasco's first resentencing petition. Our opinion on direct appeal examined the evidence presented at trial before determining that the error in offering a felony murder instruction was harmless. Nowhere does the opinion—or our subsequent opinion denying Carrasco's first resentencing petition—make clear that jury instructions, verdicts, and other portions of the record of conviction that appropriately may be considered after Senate Bill 775 alone necessarily demonstrate that Carrasco acted with express or implied malice. Under these circumstances, it would be unjust to rely upon our prior decision as law of the case. (*Stanley*, at p. 787.)

12

The error also was prejudicial because, without counsel, Carrasco was not able to brief his argument that his youth at the time of the shootings impacted his ability to perceive the risks and consequences of his conduct. As Carrasco makes clear in his briefing, intervening authority has increasingly recognized that courts should consider an offender's youth at the time of the crime in assessing the offender's level of culpability. He cites to *People v. Pittman* (2023) 96 Cal.App.5th 400, wherein Pittman urged that the fact that he was only 21 years old at the time of the attack was relevant to whether he acted with implied malice such that he could be found guilty of second-degree murder at his resentencing hearing. (*Id.* at p. 416.) Noting that "[r]ecent appellate cases have concluded nearly uniformly that a defendant's youth—defined, roughly, as being 25 years of age and younger—is a factor within the totality of circumstances relevant to the requisite mental state for felony murder[,]" the *Pittman* court concluded that "[t]he policy interests underlying the felony murder cases—that youth is relevant to a criminal defendant's ability to perceive risk and consequences, and therefore to the level of culpability—apply equally in the context of implied malice murder." (*Id.* at pp. 416–417.) The court ultimately remanded the case so the resentencing court could "consider how, if at all, Pittman's youth impacted his ability to form the requisite mental state for second-degree murder." (*Id.* at p. 418.)

Similarly here, Carrasco was 18 years old at the time of the offenses. The significance of his youth on the trial court's implied malice finding was not raised or considered during proceedings on his first resentencing petition, and he did not have counsel to brief this issue on his behalf in support of his second resentencing petition. Although we express no view as to how the trial court should rule on remand, given the significant intervening changes

13

to the law, we conclude Carrasco suffered prejudice in not even having the opportunity to have counsel argue the issue at the prima facie stage.[9]

## DISPOSITION

The order denying Carrasco's second petition for resentencing is reversed, and the matter is remanded to the trial court with directions to appoint counsel for Carrasco and conduct a new prima facie hearing.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

CASTILLO, J.

---

[9]    In light of this conclusion, we do not find the error harmless on the other basis set forth by the People.  They argue that even if the court erred in not appointing counsel, the error was harmless because the record of conviction shows as a matter of law that Carrasco was convicted under a theory of murder that remains valid after Senate Bill 1437 and Senate Bill 775 and, thus, there is no reasonable probability that appointed counsel could have done anything to alter the outcome.  But again, to reach such a conclusion, we must assume Carrasco could not demonstrate under any circumstances that his age did not impact his ability to form the requisite implied malice.  We decline to do so.

14